Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
TELEPHONE 202-372-9600

Eric B. Johnson (#020512)
Eric.johnson@quarles.com
Lukas M. Landolt (#034759)
Lukas.Landolt@quarles.com

*Attorneys for Defendant Chemguard, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Landon Young and Heather Young,<br><br>             *Plaintiffs*,<br><br>        vs.<br><br>Chemguard, Inc., Tyco Fire Products, LP, L.N. Curtis and Sons, Inc., Angus Fire Ltd., Perimeter Solutions LP, and Matlick Enterprises, Inc.,<br><br>             *Defendants*. | NO.<br><br>(Formerly Maricopa County Superior Court Case No.CV2020-017108)<br><br>**DEFENDANT CHEMGUARD, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT** |

Defendant Chemguard, Inc. ("Chemguard"), by and through undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of the State of Arizona, County of Maricopa, to the United States District Court for the District of Arizona.  As grounds for removal, Chemguard alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1.      Plaintiffs seek to hold Chemguard and certain other Defendants liable based on their alleged conduct in designing, manufacturing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiff Landon Young has used and been exposed to as a firefighter

for the Goodyear (Arizona) Fire Department.  Specifically, Plaintiffs allege that Mr. Young has been injured by the per- and polyfluoroalkyl substances ("PFAS"), including perfluoro-octanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), that they allege were contained in Defendants' AFFF.  Although the Complaint attributes Mr. Young's PFAS exposure exclusively to the AFFF he has personally worked with for firefighting and training, he has also plausibly been exposed to PFAS from another source—the water that he has ingested and has used for firefighting.  The public water supply in the City of Goodyear contains or contained PFAS that likely originated in part from AFFF used at Luke Air Force Base ("Luke AFB"), located directly north of Goodyear.  The AFFF used at Luke AFB was manufactured by a select group of suppliers (including Chemguard) whose products appear on the Department of Defense ("DoD") Qualified Products List for sale to the United States military and others in accordance with the military's rigorous specifications ("MilSpec AFFF").  Under the federal "government contractor" defense recognized in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988), Chemguard is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Chemguard denies that PFAS from any source caused Mr. Young's alleged injuries, but to the extent that Plaintiffs argue otherwise, Chemguard intends to raise the defense that those injuries were caused in whole or in part by PFAS from MilSpec AFFF—as to which Chemguard has no liability as a matter of federal law.  Under the federal officer removal statute, 28 U.S.C. § 1442, Chemguard is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

2.      This action was filed on December 23, 2020, in the Superior Court of the State of Arizona, County of Maricopa, bearing Case No. CV2020-017108.  Accurate and complete copies of all documents filed in the state court action are attached hereto as

**Exhibit A**, along with a Verification that they are true and correct copies.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 82 and 1441(a) because the Superior Court of the State of Arizona, County of Maricopa, is located within the District of Arizona.

3.     Chemguard was served with the Complaint on March 9, 2021.  Chemguard is aware that co-defendants also have been served with a Summons and Complaint, and some have entered into agreements with Plaintiffs to extend their response deadlines in the Superior Court of the State of Arizona, County of Maricopa.  Chemguard is aware of no other proceedings before the Superior Court of the State of Arizona, County of Maricopa, in this matter.

4.     Chemguard is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245 (S.D.N.Y. 1994).

5.     Plaintiffs generally allege that Defendants (including Chemguard) have manufactured, marketed, and sold AFFF products containing PFAS, including PFOS, PFOA, compounds that degrade into PFOS or PFOA, and/or other unspecified PFAS, and that the PFAS in these AFFF caused injury to Mr. Young via "consumption, inhalation and/or dermal exposure."  Ex. A, Compl. ¶¶ 1–7, 19–41.

6.     Plaintiffs assert claims for strict products liability-design defect and failure to warn (Ex. A, Compl. ¶¶ 57–67), negligent failure to warn (*id.* ¶¶ 68–72), negligent plan or design of product (*id.* ¶¶ 73–76), punitive damages (*id.* ¶¶ 77–83), and loss of consortium (*id.* ¶¶ 84–88).  Plaintiffs also seek damages at a "Tier 3 level within the criteria of Rule 26.2(c)(3)."  Ex. A, Compl. at 16.

7.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Superior Court of the State of Arizona, County of Maricopa.

8.     By filing a Notice of Removal in this matter, Chemguard does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Chemguard specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

9.     Chemguard reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442

10.     Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.   Removal is appropriate under this provision where the removing defendant establishes that: "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135.

11.     Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, 28 U.S.C. § 1442 as a whole must be "liberally construe[d]" in favor of removal.

*Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original) (internal quotation marks omitted).

12.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF.  *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-CV-1080, 2021 WL 744683, at *4 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Chemguard and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF, . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case against Chemguard and other manufacturers of AFFF). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF.  *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1") at 3–6 (removal requirements satisfied because defendant demonstrated that it manufactured AFFF under the guidance of the U.S. military); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2") at 3–5 (removal requirements satisfied where plaintiff's claims based in part on AFFF use at Part 139 airport); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3") at 3–6 (same).  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

**A.     MilSpec AFFF**

13.     Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and

---

[1] Following removal, Chemguard intends to designate this action for transfer to the MDL.

1    potentially devastating—to train its personnel, put out fires, save lives, and protect property.

2    Indeed, the United States Naval Research Laboratory developed AFFF in response to

3    catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in

4    1969.[2]   Decades later, the Naval Research Laboratory described the development of AFFF

5    as "one of the most far-reaching benefits to worldwide aviation safety."[3]

6           14.    The manufacture and sale of MilSpec AFFF is governed by rigorous military

7    specifications created and administered by Naval Sea Systems Command.  The applicable

8    specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number

9    of times since then.[4]   All MilSpec AFFF products must be qualified for listing on the

10    applicable Qualified Products List prior to military procurement.  Prior to such listing, a

11    manufacturer's products are examined, tested, and approved to be in conformance with

12    specification requirements.[5]   The MilSpec designates Naval Sea Systems Command as the

13    agency responsible for applying these criteria and determining whether AFFF products

14    satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List,

15    "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued

16    integrity of the qualification status."[6]   Naval Sea Systems Command reserves the right to

17    perform any of the quality assurance inspections set forth in the specification where such

18    inspections are deemed necessary to ensure supplies and services conform to prescribed

19    requirements.

20           15.    From its inception until very recently, the MilSpec included the express

21    requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon

22    surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical

23

---

24    [2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to
Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

25    [3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005):
Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the

26    Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available

27    at https://tinyurl.com/yxwotjpg.

[5]   Dep't   of   Defense   SD-6,   Provisions   Governing   Qualification   1   (Feb.   2014),

28    https://tinyurl.com/y5asm5bw.

[6] Dep't of Defense SD-6, *supra* n.5, at 1.

precursors—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

**B.     Mr. Young's Exposure to PFAS from MilSpec AFFF**

16.     In 1941, the U.S. Army established Litchfield Park Air Base west of Phoenix to train fighter pilots for World War II. The base was deactivated in 1946 but was reactivated in 1951 as Luke AFB, part of the Air Training Command of the newly constituted United States Air Force. Since that time, Luke AFB has trained fighter pilots in aerial and air-to-ground combat and has been used for the evaluation of new weapons and tactics. The 56th Fighter Wing at Luke AFB has trained pilots to fly F-16s since 1983 and the F-35A Lightning II since 2014. Luke AFB is the largest fighter training facility in the western world and comprises over 2600 acres of land.[7]

17.     Over the years, there have been a number of aircraft crashes at Luke AFB for which MilSpec AFFF was used to control and extinguish the fires. In addition, MilSpec AFFF has been used on the base to extinguish vehicle fires and for training exercises. The base has discharged thousands of gallons of AFFF into the soil and water. Air Force consultants have identified twelve AFFF release areas on the base where PFAS from AFFF have been detected in soil, sediment, surface water, and/or groundwater. Groundwater on the base travels offsite, including to the south and southeast. Air Force consultants have

---

[7] *See, e.g.*, Luke Air Force Base – History, 944th Fighter Wing, https://www.944fw.afrc.af.mil/About-Us/Fact-Sheets/Display/Article/189491/luke-air-force-base-history/; 56th Fighter Wing - Luke Air Force Base (Fact Sheet), https://www.luke.af.mil/Portals/58/Luke%20One%20Pager%20Mar%202021.pdf; Air Force Civil Engineer Ctr., Final Fourth Five-Year Review Report OU1, OU2 and TU-44, Luke Air Force Base, Glendale, Arizona 1-2–1-3 (Sept. 2017), https://semspub.epa.gov/work/09/100006886.pdf.

found that the zone of potential groundwater exposure includes 102 domestic and municipal supply wells within four miles to the south of the base.  The Air Force has recently offered to provide bottled water to some water utility customers in that area.[8]

18.    The City of Goodyear is served by multiple water utilities, the largest of which are Goodyear Water and Liberty Utilities.  Both obtain 100% of their raw water from groundwater wells that draw from the West Salt Valley Sub-Basin.  In addition to drawing water from its own wells, Goodyear Water has interconnections with Liberty Utilities and purchases a substantial portion of its water from Liberty Utilities to provide to its own customers.[9]

19.    Liberty Utilities' primary service area and well fields are directly to the southeast and downgradient (with respect to groundwater flow) of Luke AFB.  Its groundwater wells are all within less than less than four miles of the base, within the perimeter that Air Force consultants have identified as potentially affected by PFAS contamination from the base.  Liberty Utilities' water supply contains or has contained PFAS.  Its water was sampled for PFAS in 2014 and 2017.  PFOS has been detected at a concentration of 220 parts per trillion (ppt), PFHxS at 110 ppt, PFOA at 50 ppt, and PFHpA at 30 ppt.[10]  In 2016, the United States EPA notified officials in communities served by Liberty Utilities that PFOA and PFOS were present in some of the utility's well at levels higher than recommended by the EPA's Lifetime Health Advisory for drinking water.

[8] *See, e.g.*, Air Force Response to PFOS and PFOA, Luke Air Force Base, https://www.luke.af.mil/Facts/PFOS-PFOA-Information/; Statement of Col. Ryan Richardson, Commander, Mission Support Group, Luke Air Force Base (Feb. 24, 2021), https://youtu.be/N62oyrs5tc8; 56th Fighter Wing Public Affairs, Air Force Completes PFOS/PFOA Site Inspection at Luke AFB and Gila Bend AFAF (Apr. 10, 2019), https://www.luke.af.mil/News/Article-Display/Article/1810880/air-force-completes-pfospfoa-site-inspection-at-luke-afb-and-gila-bend-afaf/.

[9] *See, e.g.*, City of Goodyear, *2019 Water Quality Report*, https://www.goodyearaz.gov/home/showdocument?id=26260; City of Goodyear, *2018 Water Quality Report*, https://www.goodyearaz.gov/home/showdocument?id=24094; Liberty Utilities (Litchfield Park), *2017 Annual Water Quality Report*, https://arizona.libertyutilities.com/uploads/LP_CCR_17.pdf; City of Goodyear, Frequently Asked Questions: Where Does My Water Come From? https://www.goodyearaz.gov/government/departments/public-works/water-services/frequently-asked-questions.

[10] Liberty Utilities (Litchfield Park), *2017 Annual Water Quality Report*, https://arizona.libertyutilities.com/uploads/LP_CCR_17.pdf.

PFAS-containing water originating in Liberty Utilities' wells has also been provided to customers in Goodyear Water's service area. According to an Air Force official, MilSpec AFFF used at Luke AFB is likely a source of the PFAS in the water supply downgradient from the base.[11]

20.    Mr. Young has worked as a firefighter for the Goodyear Fire Department for nearly 14 years. In that time, he has worked and spent substantial time in firehouses throughout Goodyear, and he has fought fires throughout Goodyear. Although AFFF is used to control and extinguish certain types of fires (namely, liquid fuel fires), the most common firefighting agent, in Goodyear as elsewhere, is water obtained from the public water supply, either from hydrants near the site of the fire or from pumper trucks preloaded with water.

21.    In the course of his work as a firefighter, Mr. Young has consumed PFAS-containing water from the public water supply at firehouses in Goodyear and at other locations served by Liberty Utilities and Goodyear Water. He has also been exposed to PFAS by ingesting and/or having dermal contact with PFAS-containing water that he and other firefighters have used to control and extinguish fires. The PFAS to which Mr. Young has been exposed in the public water supply originates in part from Luke AFB.

22.    To be clear, Chemguard denies that PFAS from any source caused Mr. Young's alleged injuries. But to the extent that Plaintiffs present evidence to the contrary, Chemguard intends to defend itself on the ground that Mr. Young's injuries have been caused in whole or in part by his exposure to an alternative PFAS source for which Chemguard has no legal liability—water that contains PFAS originating in MilSpec AFFF used at Luke AFB.

---

[11] *See, e.g.*, Statement of Col. Ryan Richardson, Commander, Mission Support Group, Luke Air Force Base (Feb. 24, 2021); Liberty Utilities, Annual Water Quality Report, https://arizona.libertyutilities.com/uploads/Litchfield%20_%20CCR.pdf; Water Safety: Liberty Utilities Addresses Luke Air Force Base Report on PFOA and PFOS, Liberty Utilities, https://arizona.libertyutilities.com/avondale/residential/safety/water/water-safety.html.

**C.      All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

      *i.      The "Person" Requirement Is Satisfied*

      23.      The first requirement for removal under the federal officer removal statute is satisfied here because Chemguard (a corporation) is a "person" under the statute.   For purposes of § 1442(a)(1), the term "person" includes "companies, associations, firms, [and] partnerships."   *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *see Lombardi v. TriWest Healthcare All. Corp.*, No. CV-08-02381-PHX-FJM, 2009 WL 1212170, at *2 (D. Ariz. May 4, 2009) ("[C]orporate entities . . . are 'persons' within the meaning of the statute."); *Isaacson*, 517 F.3d at 135–36 (holding that a non-natural entity is a "person" for purposes of § 1442(a)(1)).

      *ii.      The "Acting Under" Requirement Is Satisfied*

      24.      The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer.   *Isaacson*, 517 F.3d at 137 (internal quotation marks omitted).   "The words 'acting under' are to be interpreted broadly."   *Id.* at 136 (citation omitted).   Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency."   *Papp*, 842 F.3d at 813.

      25.      The requirement is met here because, in providing MilSpec AFFF to Luke AFB, Chemguard furnished vital products "that, in the absence of Defendants, the Government would have had to produce itself."   *Isaacson*, 517 F.3d at 137.   MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself.   *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.   The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and

1   agents to achieve improvements in formulations."[12]   Accordingly, the military has long

2   depended upon outside contractors like Chemguard to develop and supply AFFF.  *See*

3   *Nessel*, 2021 WL 744683, at *3 (holding that Chemguard and other AFFF manufacturers

4   were "acting under" a federal officer in connection with the manufacture and sale of

5   MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); see also MDL Order 1, at 3–6

6   (finding that the "acting under" requirement was satisfied because defendant demonstrated

7   that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at

8   3–5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same).  If Chemguard

9   and other manufacturers did not provide MilSpec AFFF for use at military bases, the

10  government would have to manufacture and supply the product itself.

11          26.     In designing, manufacturing and supplying the MilSpec AFFF at issue,

12  Chemguard acted under the direction and control of one or more federal officers.

13  Specifically, Chemguard acted in accordance with detailed specifications, promulgated by

14  Naval Sea Systems Command, that govern AFFF formulation, performance, testing,

15  storage, inspection, packaging, and labeling.  Further, the AFFF products in question were

16  subject to various tests by the United States Navy before and after being approved for use

17  by the military and for inclusion on the Qualified Products List maintained by the United

18  States Department of Defense.[13]

19          *iii.*     *The Causation Requirement Is Satisfied*

20          27.     The third requirement, that the defendant's actions were taken "under color

21  of federal office . . . has come to be known as the causation requirement."  *Isaacson*, 517

22  F.3d at 137 (alteration, citation, and internal quotation marks omitted).  Like the "acting

23  under" requirement, "[t]he hurdle erected by this requirement is quite low."  *Id.*[14]  To show

24  causation, a defendant need only establish that an act that allegedly caused or contributed

25

26  [12] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.
    [13] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.
27  [14] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions
    subject to suit resulted directly from government specifications or direction." *Albrecht v.*
28  *A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21,
    2011).

1
2
to the plaintiff's injury occurred while the defendant was performing its official duties.  *Id.* at 137–38.

3
4
5
6
7
8
9
28.     Here, Plaintiffs' injuries arise at least in part from Chemguard's production and sale of PFAS-containing AFFF manufactured to military specifications for use at Luke AFB and other military facilities.  The causal connection between Plaintiffs' alleged injuries and Chemguard's actions under color of federal office is clear.  It is irrelevant that Plaintiffs' themselves do not contend that they have been injured by MilSpec AFFF.  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Id.*; *see also Nessel*, 2021 WL 744683, at *3.

10
*iv.*     *The "Colorable Federal Defense" Requirement Is Satisfied*

11
12
29.     The fourth requirement ("colorable federal defense") is satisfied by Chemguard's assertion of the government contractor defense.

13
14
15
16
17
18
19
20
21
22
23
24
25
30.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  A "defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.") (citation omitted).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."  *Cuomo*, 771 F.3d at 116 (citing *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)).[15] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa.

26

27
28
[15] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (citations omitted)).

2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'"  *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

31.     Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

32.     Chemguard has satisfied these elements for purposes of removal.  As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Chemguard's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec.  *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to Chemguard); MDL Order 3, at 5 (same); *see also Nessel*, 2021 WL 744683, at *4.

33.     Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included

1    testing protocols and requirements for toxicity, chemical oxygen, and biological demand.

2    Indeed, it is clear that the United States has long understood that AFFF contain PFAS and

3    may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate

4    through the soil and potentially reach groundwater; and that it has been reported that this

5    may raise environmental or human health issues.[16]  For example, as early as October 1980,

6    a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force

7    Engineering Service Center, and the U.S. Army Medical Research and Development

8    Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents

9    resulting from fire fighting exercises are considered to have adverse effects

10   environmentally."[17]  By no later than 2001, DoD was aware of data purportedly showing

11   PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United

12   States EPA issued a draft hazard assessment for PFOA, which reviewed in detail, among

13   other data, human epidemiological studies and animal toxicology studies pertaining to

14   alleged associations between PFOA and cancer.  More recently, in a November 2017 report

15   to Congress, the Department of Defense acknowledged the concerns raised by the EPA

16   regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or

17   PFOA as a "mission critical product [that] saves lives and protects assets by quickly

18   extinguishing petroleum-based fires."[18]  Indeed, Naval Sea Systems Command continues

19   to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including

20   PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA)

21   in AFFF formulations.[19]  *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the

22   alleged risks of PFC-based AFFF products but continues to purchase them supports the

---

[16] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002) (excerpt).

[17] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[18] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[19] MIL-PRF-24385F(3) § 6.6 & Tables 1, 3 (2019), https://quicksearch.dla.mil/Transient/439603DBACD640219EA71332754EBCB6.pdf; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

1    position that the government approved reasonably precise specifications for the claimed

2    defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed

3    the U.S. military of dangers associated with its AFFF products of which the military was

4    not already aware, [defendant] points to materials such as a November 2017 Department of

5    Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns

6    with PFOS/PFOA in drinking water . . . .").

7        34.    At minimum, these facts constitute colorable evidence that Naval Sea

8    Systems Command "made a discretionary determination" regarding the formulation of

9    MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See*

10   *Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prods. Liab. Litig.*), 517 F.3d 76, 90 (2d

11   Cir. 2008); *see also Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL

12   5109532, at *5 (S.D.N.Y. Oct. 21, 2011) ("A defendant is not required to warn the

13   government where 'the government knew as much or more than the defendant contractor

14   about the hazards of the product.'" (citation omitted)).  Where, as here, the government has

15   exercised "discretionary authority over areas of significant federal interest such as military

16   procurement," the government contractor defense applies. *In re "Agent Orange" Prod.*

17   *Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

18       35.    Chemguard's use of PFAS in MilSpec AFFF was required by military

19   specifications.  By seeking to impose tort liability on Chemguard for injuries to Mr. Young

20   that were caused in whole or in part by Chemguard's compliance with military

21   specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated

22   by the military.  The government contractor defense precludes such an attack. *See Boyle*,

23   487 U.S. at 509.

24       WHEREFORE, Chemguard hereby removes this action from Superior Court of the

25   State of Arizona, County of Maricopa, to this Court.

26   //

27   //

28   //

RESPECTFULLY SUBMITTED this 1st day of April, 2021.

By: */s/ Lukas Landolt*
Eric B. Johnson
Lukas M. Landolt
Quarles & Brady, LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391

*Counsel for Chemguard, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and delivered a copy of the foregoing via United States Mail to the following:

Patrick J. McGroder III (002598)
Patrick J. McGroder IV (030815)
BEUS GILBERT MCGRODER PLLC
701 North 44th Street
Phoenix, Arizona 85008-6504
p3@beusgilbert.com
pjmiv@beusgilbert.com

Kerry Miller
Jason W. Burge
Danielle Teutonico
FISHMAN HAYGOOD LLP
201 St. Charles Ave., Floor 46
New Orleans, Louisiana 70170
kmiller@fishmanhaygood.com
jburge@fishmanhaygood.com
dteutonico@fishmanhaygood.com

*Counsel for Plaintiffs*

Matthew D. Thurlow
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
mthurlow@bakerlaw.com

*Counsel for Perimeter Solutions, LP*

1    Jill J. Ormond
      William Shelley
2    GORDON REES SCULLY MANSUKHANI LLP
      Renaissance One
3    Two North Central Ave., Suite 2200
      Phoenix, Arizona  85004
4    jormond@grsm.com
      wshelley@grsm.com
5
      *Counsel for L.N. Curtis & Sons, Inc.*
6
      Sharon A. Briggs
7    RESNICK & LOUIS PC
      8111 E. Indian Bend Rd.
8    Scottsdale, Arizona  85250
      sbriggs@rlattorneys.com
9
      *Counsel for Matlick Enterprises, Inc.*
10
      Angus Fire Ltd.
11   c/o Corporation Service Company
      211 E. 7th Street, Suite 620
12   Austin, Texas 78701

13

14   */s/ Maria Marotta*

15

16

17

18

19

20

21

22

23

24

25

26

27

28